UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                             :

SHAWNET NICKESHA MCDONALD,        :

                                    :

                          Petitioner,     :         25-CV-09355 (JAV)

                                      :

      -v-                            :      <u>OPINION AND ORDER</u>

                                      :

LADEON FRANCIS, et al.,               :

                                      :

                          Respondents.    :

                                      :
---------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

      On Friday, November 7, 2025, a petition for writ of habeas corpus was filed

on behalf of Shawnet Nickesha Mcdonald ("Petitioner") by her life partner and next

friend, Chattara Kelly, against Respondents (collectively, "Respondents" or the

"Government").  ECF No. 1 ("Petition") at 1; ECF No. 2 ("Kelly Decl."), ¶¶ 1-2. The

Petition alleges that U.S. Immigration and Customs Enforcement ("ICE") violated

Petitioner's due process rights by arresting her as she exited her scheduled

immigration court hearing at 26 Federal Plaza in Manhattan.  Petition at 1-3.

Petitioner seeks relief to remedy her unlawful arrest and detention by the

Department of Homeland Security ("DHS") and ICE.  *Id.*at 1-3.  For the following

reasons, the Petition is GRANTED.

**BACKGROUND**

      Petitioner is a Jamaican national who entered the United States via San

Ysidro, California without inspection on or about January 30, 2023.  ECF No. 15

("Hampton Decl."), ¶ 3.  Petitioner alleges that, after fleeing Jamaica due to risk of

death and persecution, Petition, ¶ 4, she turned herself in at the border, was placed in immigration proceedings, and was subsequently "released under 236 and 1226 authority." Petition, ¶ 9. The Government attests that an agent with U.S. Customs and Border Protection encountered Petitioner on January 30, 2023. Hampton Decl., ¶ 4. She was presented with a Notice to Appear on January 31, 2023, charging her with being an inadmissible alien pursuant to Immigration and Nationality Act ("INA") section 212(a)(6)(A)(i), 8 U.S.C § 1182(a)(6)(A)(i), *id.*, ¶ 5, and released on her own recognizance under the Alternative to Detention Program, pursuant to a Form I-220A, *id.*, ¶ 6.

Over the course of the next two years and 10 months, Petitioner "was released and began attending her hearings as scheduled," including "various hearings w[h]ere the immigration judge ha[d] granted her time to procure counsel." Petition at 3; Hampton Decl., ¶¶ 13-16. On November 7, 2025, Petitioner appeared at her third master calendar hearing at 26 Federal Plaza. Hampton Decl., ¶ 16. At the conclusion of her scheduled court appearance that day, Petitioner alleges that she was "arrested by ICE/DHS with no explanation and without the presentation of any legal documents," after which she was "whisked away and placed in a holding tank with others that had been similarly arrested." Petition, ¶¶ 11-12. Petitioner claims that the "officers for ICE or DHS began to detain numerous people exiting the courtroom that day without any individualized assessments as to whether petitioners posed a flight risk or a danger to the community." *Id.*, ¶ 13. She alleges that she was not provided any notice of her status change, nor given opportunity to

file bond, seek release or representation, or to be heard as to whether a change of custody was warranted. *Id.*, ¶¶ 15-18.

The Government does not substantively contest these allegations. The Government concedes that ICE took Petitioner into custody after she appeared for her master calendar hearing and subsequently transported her to ICE's "processing space" at 26 Federal Plaza, where she was advised of her right to consular notification and served with a "Warrant for Arrest of Alien (Form I-200), Notice of Fee Assessment Under 8 U.S.C. § 1815 (Form 1815), a separate form entitled 'Important Information about Section 236(a) Initial Detention Decisions,' a copy of the Online Detainee Locator System Privacy Notice[,] and a list of pro bono legal service providers." Hampton Decl., ¶¶ 16-17.

On Monday, November 10, 2025, this Court entered an Order to preserve its jurisdiction under 28 U.S.C. § 1651, prohibiting ICE from removing Petitioner from the United States. ECF No. 4 at 1. On November 12, 2025, Respondents filed a status report notifying the Court that ICE had transferred Petitioner on Sunday, November 9, 2025, from 26 Federal Plaza in New York to River Correctional Center in Ferriday, Louisiana, where she remains. ECF No. 10 at 1. Pro Bono Counsel Paul O'Dwyer entered an appearance for Petitioner on November 13, 2025. ECF No. 11 at 1.

On November 20, 2025, the Government filed its opposition to the Petition, ECF No. 14 ("Opp'n Mem."), and a Return of Writ, ECF No. 16 ("Return"), with five exhibits. Petitioner's reply in support of her Petition is due today. *See* ECF No. 18.

Upon review of Respondents' opposition materials, however, the Court finds no need
to await Petitioner's reply.  *See* 28 U.S.C. § 2243 (commanding courts to dispose of
habeas petitions expeditiously, "as law and justice require"); *Guzman Cardenas* v.
*Almodovar*, No. 25-CV-9169 (JMF), 2025 WL 3215573, at *1 n.1 (S.D.N.Y. Nov. 18,
2025) ("Upon review of Respondents' opposition, however, the Court concludes that
there is no need to await Guzman's reply.").  Nor is there need for an evidentiary
hearing, as the Petition "presents only issues of law."  *Guzman Cardenas*, 2025 WL
3215573, at *1 n.1 (cleaned up); *see also Kelly v. Almodovar*, No. 25-CV-6448
(AT), 2025 WL 2381591, at *1 n.1 (S.D.N.Y. Aug. 15, 2025) (citation omitted); *Cuy
Comes v. Francis*, No. 25-CV-9283 (AT), 2025 WL 3206491, at *1 n.1 (S.D.N.Y. Nov.
14, 2025) (citation omitted).

## LEGAL STANDARDS

Petitioner brings a petition for a writ of habeas corpus under 28 U.S.C.
§ 2241, which "authorizes a district court to grant a writ of habeas corpus whenever
a petitioner is 'in custody in violation of the Constitution or law or treaties of the
United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28
U.S.C. § 2241(c)(3)).  "Federal courts have jurisdiction to hear habeas corpus claims
by non-citizens challenging the constitutionality of their detention."  *Lopez v.
Sessions*, No. 18-CV-4189 (RWS), 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018)
(citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003)).

The Petition turns principally on the same question that "dozens of other
district courts have recently confronted: whether, as a person who has long been

living in the United States after entering the country unlawfully, she is detained under 8 U.S.C. § 1225(b)(2)(A) or . . . 8 U.S.C. § 1226(a)." *Guzman Cardenas*, 2025 WL 3215573, at *1. Her case then poses a "subsidiary question—depending upon which section authorizes Petitioner's detention—. . . whether Petitioner's re-detention violated the Fifth Amendment's procedural and substantive due process requirements." *Savane v. Francis*, No. 25-CV-6666 (GHW), 2025 WL 2774452, at *1 (S.D.N.Y. Sept. 28, 2025).

"U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)," whereas it "authorizes the Government to detain certain aliens *already* in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). Accordingly, under Section 1226, a non-citizen "already in the country," *id.*, "*may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Because detention is discretionary under Section 1226, the noncitizen may apply for release on either bond or conditional parole, which requires a showing that she does not pose a danger to the community and is likely to appear for future proceedings. *Id.* § 1226(c)(4); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). By contrast, Section 1225 provides that "if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

## DISCUSSION

The Government contends that Petitioner is detained under Section
"1225(b)(2)(A) and thus subject to mandatory detention and potential release only
on discretionary parole by DHS." Opp'n Mem. at 1. This conclusion is contrary to
"the overwhelming weight of authority" in this Circuit. *Guzman Cardenas*, 2025
WL 3215573, at *2. Although the Second Circuit has yet to address this issue, all of
the district courts within this District have uniformly determined that Section
1225(b)(2)(A) does not apply to an inadmissible alien who has been released from
federal custody, placed in immigration proceedings, and then allowed to reside in
the United States for an extended period of time. This Court agrees that in the
circumstances presented here, Section 1226(a) governs.

As Judge Furman explained in *Guzman Cardenas*, "this Court need not spill
much ink on th[is] issue" given the legions of decisions reaching this consensus. *Id.*
(citing, in particular, "the thorough and well-reasoned analyses of the issue"
by Judge Liman in *Tumba Huamani v. Francis*, No. 25-CV-8110 (LJL), 2025 WL
3079014, at *2-*5 n.1 (S.D.N.Y. Nov. 4, 2025)), Judge Ho in *Lopez Benitez v.
Francis*, No. 25CV-5937 (DEH), 2025 WL 2371588, at *3-9 (S.D.N.Y. Aug. 13, 2025),
Judge Subramanian in *J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142,
at *2-5 (S.D.N.Y. Oct. 28, 2025), and Judge Cartwright in *Rodriguez Vasquez v.
Bostock*, No. 25-CV-05240-TMC, 2025 WL 2782499, at *16-26 (W.D. Wash. Sept. 30,
2025)). For example, as in this case, the petitioner in *Tumba Huamani* had been
stopped by a border patrol agent after entering the United States without

inspection, charged with being inadmissible pursuant to INA section 212(a)(6)(A)(i), released from custody and placed into immigration proceedings. 2025 WL 3079014, at *1. The district court concluded that "although [the petitioner] is technically an 'applicant for admission' because she has not been formally admitted to the United States, it does not follow that she is necessarily 'seeking admission' under Section 1225(b)(2)." *Id.* at *3.

This conclusion arises from a close reading of the text of Section 1225 itself. *Tumba Huamani*, 2025 WL 3079014, at *3. "Following the cardinal rule of statutory interpretation that every clause and word of a statute should have meaning, for Section 1225(b)(2) to apply, [Petitioner] must be an applicant for admission and be seeking admission, but [i]f, as Respondents argue, § 1225(b)(2)(A) were intended to apply to all applicant[s] for admission, [then] there would be no need to include the phrase seeking admission in the statute." *Id.* (cleaned up).

The context and overall statutory scheme likewise support this reading of Section 1225, *see, e.g.*, *J.G.O.*, 2025 WL 3040142, at *4 ("Each class of people on that list [within Section 1225] includes somebody who is entering the country, not somebody who's already here; and though the list is one of exceptions, it's suggestive of the type of person who's meant to be covered"), as does the amendment history of Section 1226, *see, e.g., Lopez Benitez*, 2025 WL 2371588, at *7 ("If, as Respondents suggest, a non-citizen's inadmissibility were alone already sufficient to mandate detention under section 1225(b)(2)(A), then the 2025 amendment [known as the Laken Riley Act], which requires detention for

noncitizens who are *both* inadmissible and meet certain criminal criteria, would have no effect." (quotation marks omitted)).

The Court next considers whether, in exercising its discretionary authority to detain Petitioner under Section 1226(a), the Government violated Petitioner's due process rights. The Court easily concludes that it has. The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property without due process of law," U.S. Const. amend. V., regardless of "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993). Due process demands that unless a person is "given[ ] notice of the case against [her] and opportunity to meet it," she may not be detained. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

In the Second Circuit, the adequacy of the process provided in civil immigration confinement is determined through application of the *Mathews v. Eldridge* balancing test. *Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). This test evaluates "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal

and administrative burdens that the additional or substitute procedures would entail." *Id.* (citing *Mathews*, 424 U.S. at 335); *see also Lopez Benitez,* 2025 WL 2371588, at *9.

As to factor one, in Petitioner's case, "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024). While the Government undoubtedly has authority to detain Petitioner under Section 1226, Petitioner is entitled to "adequate procedural protections" before being deprived of her liberty. *Zadvydas*, 533 U.S. at 690. The Court adopts the thorough and persuasive reasoning of Judge Ho in the *Lopez Benitez* decision in concluding that, before the Government may exercise its discretion to detain a noncitizen pursuant to Section 1226(a), the statute and its implementing regulations "require ICE officials to make an individualized custody determination." *Lopez Benitez*, 2025 WL 2371588, at *10; *see also Tumba Huamani*, 2025 WL 3079014, at *7 ("But Due Process still requires that such discretion actually be exercised—i.e., that some determination actually be made."). In making that determination, the relevant DHS official must consider two factors, whether the non-citizen poses a "danger to property or persons" and whether he or she is "likely to appear for any future proceeding." *Lopez Benitez*, 2025 WL 2371588, at *10 (quoting 8 C.F.R. § 1236.1(c)(8)).

Here, the Government does not contend that it conducted any form of individualized assessment prior to detaining Petitioner. Nothing in the record

indicates who made the decision to detain Petitioner, when that decision occurred, or on what basis the decision to detain him was made.[1]  Rather, from the unrefuted allegations in the Petition, it appears that ICE officials swept up a number of persons who were scheduled to appear before an immigration judge that day. "[T]reating attendance in immigration court as a game of detention roulette is not consistent with the constitutional guarantee of due process." *Tumba Huamani,* 2025 WL 3079014, at *7.

As to the second *Mathews* factor, "[t]he purpose of requiring an exercise of discretion prior to the decision to detain a noncitizen who is not subject to mandatory detention is to prevent an erroneous deprivation of liberty." *Lopez Benitez*, 2025 WL 2371588, at *12.  The risk of erroneous deprivation through spontaneous arrest after a scheduled immigration hearing, at which Petitioner dutifully appeared, is high.

As to the third factor, "to require that the Government justify continued detention promotes the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Black*, 103 F.4th at 154 (cleaned up); *see also Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018) (observing that "any amount of actual jail time . . .

---

[1] Although the Government's opposition papers reference that Petitioner has twice been arrested since her entry into the United States, Opp'n Mem. at 6, Hampton Decl., ¶¶ 11-12, the Government does not allege that these arrests were known by the ICE officials at the time of her arrest, let alone that they played any role in an individualized assessment contributing to Petitioner's detention by ICE.  *See generally* Opp'n Mem.; Hampton Decl.

has exceptionally severe consequences for the incarcerated individual and for society which bears the direct and indirect costs of incarceration" (internal quotation marks and alterations omitted)).

Finally, the Government contends that Petitioner should be required to exhaust administrative remedies through a bond hearing before an immigration judge. Opp'n Mem. at 18-20. Here too, the Court adopts the reasoning of Judge Ho and Judge Liman in rejecting these arguments. *Lopez Benitez*, 2025 WL 2371588, at *13; *Tumba Huamani*, 2025 WL 3079014, at *7-*8.

Having determined that Petitioner was detained by ICE under Section 1226(a), that her procedural due process rights were violated, and that she is entitled to a writ of habeas corpus on those bases, the Court does not address Petitioner's alternative arguments that her substantive due process rights were violated or that Respondents' actions violated the Administrative Procedure Act.

## CONCLUSION

Accordingly, the Petition is GRANTED. The Petition was filed before Petitioner was transferred to Louisiana, and thus did not seek transport back to this District. It did seek, however, to "[e]njoin the Respondents from transferring Petitioner away from the jurisdiction of this district" and to compel the Court to "[g]rant any other relief which this Court deems just and proper." The Court therefore ORDERS Respondents to transport Petitioner back to the Southern District of New York by November 29, 2025, to immediately release her from custody following that transfer, and to certify compliance with this order no later

than 5:00 p.m. on December 1, 2025.  *Lopez Benitez*, 2025 WL 2371588, at *15; *Zhu v. Genalo*, No. 25-CV-06523 (JLR), 2025 WL 2452352, at *10 (S.D.N.Y. Aug. 26, 2025); *Tumba Huamani,* 2025 WL 3079014, at *9 n.6 (citing cases).

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:  November 26, 2025
     New York, New York

                                           JEANNETTE A. VARGAS
                                    United States District Judge